**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 22-2647

_____

JERYL TURCO,

Appellant

v.

CITY OF ENGLEWOOD, NEW JERSEY

_____

Appeal from the United States District Court
for the District of New Jersey
(D. C. No. 2-15-cv-03008)
District Judge:  Honorable Susan D. Wigenton

_____

Submitted under Third Circuit L.A.R. 34.1(a)
on May 19, 2023

Before:  SHWARTZ, MONTGOMERY-REEVES and ROTH, Circuit Judges

(Opinion filed: January 31, 2024)

_____

OPINION[*]

_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

ROTH, Circuit Judge

The District Court upheld a City of Englewood ordinance which authorized the creation of eight-foot buffer zones outside the entrances to health care and transitional facilities. Because the Ordinance is narrowly tailored, accords with the First Amendment, and is not overbroad, we will affirm the judgment of the District Court dismissing the complaint.

## I. Factual and Procedural Background

In late 2013, "militant activists and aggressive protestors" associated with the Bread of Life evangelical ministry began to engage in "extremely aggressive, loud, intimidating, and harassing behavior" outside Metropolitan Medical Associates (MMA), a health care clinic that provides reproductive services to women, including abortions.[1] The City Council of Englewood, New Jersey (the City) discussed possible avenues for responding to the antiabortion protests, including an increase in police presence and patrols and prosecution of protestors based on third-party complaints. The City, however, found each solution ineffective.

As a result, in March 2014, the City adopted a buffer-zone ordinance (the Ordinance) restricting the presence of certain persons, including sidewalk counselors and protestors, from areas in front of health care or transitional facilities.[2] In essence, the

---

[1] Appx. 518, 526.
[2] The Ordinance provides:

Ordinance created three overlapping buffer zones in front of qualifying facilities: "Two semicircular buffer zones extended outwards eight feet from either side of the facility's entrance. The third buffer zone spanned the width of the facility's entrance and extended to the street."[3]

Jeryl Turco, a non-violent "sidewalk counselor," not associated with the Bread of Life ministry, brought suit against the City pursuant to 42 U.S.C. § 1983, alleging that the Ordinance was overbroad and violated her First Amendment rights to freedom of speech, assembly, and association.[4] After discovery, the District Court granted Turco's cross-motion for summary judgment, concluding that the statute was overbroad and not narrowly tailored to serve the government's interest.[5] On appeal, we reversed.[6] We set forth the appropriate standards for assessing First Amendment challenges and overbreadth and found that summary judgment was improper.[7] We then remanded for further proceedings consistent with our governing legal standards.[8]

---

Within the City of Englewood, no person shall knowingly enter or remain on a public way or sidewalk adjacent to a health care facility or transitional facility within a radius of eight feet of any portion of an entrance, exit or driveway of such facility or within the area within a rectangle created by extending the outside boundaries of any entrance, exit or driveway of such facility in straight lines to the point where such lines intersect the sideline of the street in front of such entrance, exit or driveway.

Appx. 527–28.

[3] *Turco v. City of Englewood*, 935 F.3d 155, 159 (3d Cir. 2019).

[4] Appx. 42.

[5] *Turco v. City of Englewood*, No. 2:15-cv-03008-SDW-LDW, 2017 WL 5479509, at *4–5 (D.N.J. Nov. 14, 2017).

[6] *Turco*, 935 F.3d at 158.

[7] *Id.* at 161–72.

[8] *Id.* at 172.

The case proceeded to trial, after which the District Court found in favor of the City on all claims.[9]  Turco appeals.  Specifically, she contends that the District Court erred in holding that the Ordinance (1) does not burden Turco's constitutional rights to engage in free speech activities, (2) is narrowly tailored, and (3) is not overbroad.[10]

## II.      Jurisdiction and Standard of Review

We have jurisdiction under 28 U.S.C. § 1291.  On appeal from a bench trial, we review all questions of law de novo.[11]  "Although we generally review a district court's factual findings for clear error, '[i]n the First Amendment context, reviewing courts have a duty to engage in a searching, independent factual review of the full record.'"[12]  Even so, we give "some deference" to the District Court's "reasonable assessment" due to its "familiarity with the facts and the background of the dispute between the parties even under our heightened review."[13]

## III.     First Amendment Challenge

We assess § 1983 challenges alleging First Amendment violations using a three-part test.[14]  First, we must "determine whether the First Amendment protects the speech

---

[9] *Turco v. City of Englewood*, 621 F. Supp. 3d 537, 553 (D.N.J. 2022).
[10] Appellant Br. 3.
[11] *VICI Racing, LLC v. T-Mobile USA, Inc.*, 763 F.3d 273, 282–83 (3d Cir. 2014) (citation omitted).
[12] *ACLU v. Mukasey*, 534 F.3d 181, 186 (3d Cir. 2008) (quoting *United States v. Scarfo*, 263 F.3d 80, 91 (3d Cir. 2001) (alteration in original)).
[13] *Schenck v. Pro-Choice Network of Western New York*, 519 U.S. 357, 381 (1997) (quoting *Madsen v. Women's Health Center, Inc.*, 512 U.S. 753, 769–70 (1994)).
[14] *Turco*, 935 F.3d at 161 (citing *Cornelius v. NAACP Legal Defense and Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985)).

at issue."[15]  Second, we must "consider 'the nature of the forum.'"[16]  Third, we must "resolve 'whether the [government's] justifications for exclusion from the forum satisfy the requisite standard.'"[17]

At this stage, only the last prong of the test is at issue.[18]  We have already held— and the parties agree—that the restrictions imposed are content-neutral.[19]  Thus, intermediate scrutiny applies.[20]  An ordinance withstands intermediate scrutiny if the ordinance is "narrowly tailored to serve a significant governmental interest."[21]  Narrow tailoring requires that the ordinance not "burden substantially more speech than is necessary to further the government's legitimate interests."[22]  The ordinance "need not be the least restrictive or least intrusive means of serving the government's interests."[23]  Instead, the government simply "may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals."[24]

### A. The Government Interests.

The District Court properly recognized the City's substantial and legitimate interests, which the Ordinance plainly serves.  In fact, we have already recognized cities'

---

[15] *Id.* at 161–62 (citing *Cornelius*, 473 U.S. at 797).

[16] *Id.* at 162 (quoting *Cornelius*, 473 U.S. at 797).

[17] *Id.* (quoting *Cornelius*, 473 U.S. at 797) (alteration in original).

[18] *Id.*

[19] *Id.*

[20] *Id.* (citing *McCullen v. Coakley*, 573 U.S. 464, 485–86 (2014)).

[21] *Id.* (quoting *Bruni v. City of Pittsburgh (Bruni I)*, 824 F.3d 353, 363–64 (3d Cir. 2016)).

[22] *Id.* (quoting *McCullen*, 573 U.S. at 486).

[23] *Id.* (quoting *McCullen*, 573 U.S. at 486) (internal marks omitted); *Ward v. Rock Racism*, 491 U.S. 781, 799 (1989)).

[24] *McCullen*, 573 U.S. at 486 (quoting *Ward*, 491 U.S. at 798).

and states' substantial interest "in protecting the health and safety of its citizens, which 'may justify a special focus on impeded access to health care facilities and the avoidance of potential trauma to patients associated with confrontational protests."[25] Buffer zones similar to those the Ordinance authorizes "'clearly serve' the 'government interests in ensuring public safety and order, promoting the free flow of traffic on streets and sidewalks, and protecting a woman's freedom to seek pregnancy-related services.'"[26] At the same time, such rules "provide specific guidance to enforcement authorities [and] serve the interest in evenhanded application of the law."[27]

## B. Burden on Sidewalk Counselors.

The District Court properly found that the Ordinance is narrowly tailored, and thus survives intermediate scrutiny, because the record and related case law demonstrate that the Ordinance does not place a substantial burden on Turco's ability to communicate.

The record demonstrates that, despite Turco's suggestion that the Ordinance makes it "more difficult for her to engage in speech activities,"[28] the burden is small as she can still engage in several forms of communication. Both before and after the adoption of the Ordinance, Turco concedes that she could talk "to patients on some kind

---

[25] *Turco*, 935 F.3d at 166 (quoting *Hill v. Colorado*, 530 U.S. 703, 715 (2000)).
[26] *Id.* at 163 (quoting *McCullen*, 573 U.S. at 486–87); *see also Schenck*, 519 U.S. at 375–76 (recognizing same interests in buffer zones around clinics); *Hill*, 530 U.S. at 716–17 (recognizing "[t]he unwilling listener's interest in avoiding unwanted communication" and that "First Amendment does not demand that patients at a medical facility undertake Herculean efforts to escape the cacophony of political protests") (quoting *Madsen*, 512 U.S. at 772–73).
[27] *Turco*, 935 F.3d at 166 (quoting *Hill*, 530 U.S. at 715).
[28] Appellant Br. 28.

of regular basis."[29]  The District Court points to several alternate routes Turco can take to communicate with patients,[30] and the record demonstrates that despite the buffer zone, Turco still follows and speaks with patients up to 100 feet from the clinic, far beyond the buffer zone.

While Turco calls the buffer zone an "obstacle course,"[31] Turco testified that she could walk from one side of the building entrance to the other, and, until filing this lawsuit, Turco regularly passed through the buffer zone to speak to clients rather than run through the street.  Another sidewalk counselor, Rosemary Garrett, also testified that she could still speak to and assist clinic patients after adoption of the buffer zone.  Garrett was "not bothered by the new buffer zone" because it did not affect her counseling.[32]  Instead, it was the hostile protestors from Bread of Life that "interfere[d] with [Garrett's] ability to counsel people."[33]  Based on the record, aptly referred to by the District Court, the Ordinance does not place a substantial burden on Turco's speech.

This conclusion accords with existing case law.  In *Hill v. Colorado*, the Supreme Court held that an eight-foot buffer zone withstood intermediate scrutiny because an "8-foot zone allows the speaker to communicate at a 'normal conversational distance.'"[34]  The Court explicitly stated that "[s]igns, pictures, and voice itself can cross an 8-foot gap

---

[29] Appx. 128.
[30] *Turco*, 621 F. Supp. 3d at 549.
[31] Appx. 98.
[32] Appx. 469.
[33] Appx. 472.
[34] 530 U.S. at 726–27; *see also id.* at 729 ("[T]he 8–foot restriction on an unwanted physical approach leaves ample room to communicate a message through speech.").

with ease."[35]  Here, Turco will regularly stand *less than* eight feet from listeners.  In *Hill*, the Ordinance imposed a floating buffer-zone requiring side-walk counselors to *remain* eight feet from patients while they are within 100 feet of a health care facility.[36]  By contrast, here, because the Ordinance imposes a fixed buffer zone, Turco will *at most* be eight feet from listeners at any time and only while they remain at opposite sides of the buffer zone in front of the facility.

While striking down several floating buffer zones, the Supreme Court has upheld fixed-buffer zones far larger than those the Ordinance here authorizes.  For example, in *Schenck v. Pro-Choice Network of Western New York*, the Court upheld fixed fifteen-foot buffer zones around clinic doorways, driveways, and parking lot entrances.[37]  Likewise, in *Madsen v. Women's Health Center, Inc*., the Court upheld a fixed thirty-six-foot buffer zone around a clinic's entrances and driveway on a public street.[38]  We are not persuaded by—and in fact, already rejected—Turco's contention that the burden on Turco's speech is greater than that in *Hill* and more akin to that in *McCullen*.  The thirty-five-foot buffer zone in *McCullen* is a "substantial distinction" from the eight-foot one here.[39]

---

[35] *Id.* at 729.

[36] *Hill*, 530 U.S. at 707–08.

[37] 519 U.S. at 371, 380–81.

[38] 512 U.S. at 757.  We note that the buffer zones in *Schenck* and *Madsen* were created under injunctions, rather than statutes, and thus are assessed under a different, albeit more stringent, standard. *See id.* at 765 ("We believe that these differences require a somewhat more stringent application of general First Amendment principles [in the] context [of injunctions]."); *Schenk*, 519 U.S. at 362–70.  Even so, under a stricter standard, the Supreme Court found that both zones pass muster under the First Amendment.  *Madsen*, 512 U.S. at 757; *Schenck*, 519 U.S. at 371, 380–81.

[39] *See Turco*, 935 F.3d at 163.

Further, even if the buffer-zone makes certain forms of communicating more difficult, the District Court correctly recognized that the buffer-zone may simultaneously facilitate sidewalk counselors' communication. Turco recognized the strain Bread of Life protestors have placed on her ability to communicate her message, noting that she would "be able to counsel better . . . if they weren't there."[40] Similarly, Garrett stated that while the buffer zone did not harm her counseling efforts, her efforts were harmed by protestors' yelling and screaming. As Turco acknowledges, the Ordinance generally succeeded in calming down Bread of Life protestors. Thus, like in *Hill*, by "encourag[ing] the most aggressive and vociferous protestors to moderate their confrontational and harassing conduct," the Ordinance may "make it easier for thoughtful and law-abiding sidewalk counselors like [Turco] to make [herself] heard."[41] As a result, the Ordinance itself may alleviate the need for Turco to follow and communicate closely with each patient.

Accordingly, the Ordinance does not place a substantial burden on Turco's speech.

## C. Less Restrictive Alternatives.

We also agree with the District Court's conclusion that the Ordinance is narrowly tailored because the City tried and considered less restrictive alternatives.[42]

---

[40] Appx. 121. Turco also noted that the escorts, who were present because of Bread of Life's aggressive tactics, interfered with her counseling efforts. Appx. 90.
[41] *Hill*, 520 U.S. at 727.
[42] In fact, we already recognized that, based on the record, the District Court could reasonably draw this conclusion. *Turco*, 935 F.3d at 167–69.

Where "the burden on speech is de minimis, a regulation may be viewed as narrowly tailored" as "any challengers would struggle to show that 'alternative measures [would] burden *substantially* less speech.'"[43]  By contrast, where the burden is substantial, the City needs to show that it seriously considered substantially less restrictive alternatives.[44]  Because this is an "intensely factual . . . inquiry," we must broadly defer "to legislative judgments and [] the legislative body need not meticulously vet every less burdensome alternative."[45]

Because we agree with the District Court that the burden on Turco's speech is not substantial, our inquiry can end there.  Even so, we agree with the District Court that the City properly tried and considered less restrictive alternatives.  Lynn Algrant, the President of Englewood City Council, and Timothy Dacey, the City Manager for Englewood, testified extensively about alternatives considered by the City.

For example, the City considered an increase in police patrols and police presence by both on-duty and off-duty officers.  However, these efforts were unsuccessful.[46]  Off-duty police officers had little interest in taking on the work.  Further, due to financial

---

[43] *Bruni v. City of Pittsburgh (Bruni II)*, 941 F.3d 73, 89 (3d Cir. 2019) (quotations omitted and emphasis in original); *see also Hill*, 520 U.S. at 726 ("[W]hen a content-neutral regulation does not *entirely foreclose* any means of communication, it may satisfy the tailoring *requirement* even though it is not the least restrictive or least intrusive means of serving the statutory goal." (emphases added)).
[44] *Bruni II*, 941 F.3d at 89.
[45] *Turco*, 935 F.3d at 170–71 (citing and quoting *Bruni I*, 824 F.3d at 357, 370 n.18).
[46] *See Bruni II*, 941 F.3d at 90–91 (recognizing that the City attempted to increase police detail but these efforts were nonetheless unsuccessful due to costs and because "incident-based responses by the police . . . proved unsuccessful in preventing or deterring aggressive incidents and congestion").

constraints, vacancies in the police department, and ongoing violent crime throughout Englewood, police were limited in how often they could patrol the streets surrounding MMA. When they did patrol, de-escalations were temporary. Protestors could see the police coming down the one-way street, and would then stop their activity for a few minutes and resume once police had passed. Police also instituted a "no-go zone" in front of MMA's door, but protestors ignored the zone, taunting and filming the police officers in the process.[47]

The City also encouraged MMA to seek an injunction or file criminal complaints. Police, however, required clinic escorts to submit their full names on any police reports or complaints. Clinic escorts refused. They feared retribution from protestors, particularly after one found a picture posted online of herself inside a bullseye.

Affording the City the required deference, we are convinced based on the record that the City adequately considered less burdensome alternatives. Accordingly, we find that the Ordinance is narrowly tailored and satisfies intermediate scrutiny.

## IV. Overbreadth

Turco also misses the mark in her appeal of the District Court's finding that the Ordinance is not overbroad.

To demonstrate overbreadth, "the overbreadth claimant bears the burden of demonstrating, 'from the text of [the law], and from actual fact,' that substantial

---

[47] Appx. 246.

11

overbreadth exists."[48]  We agree with the District Court that Turco has not met her burden.

Turco first argues that the Ordinance is overbroad because it authorizes the creation of buffer zones outside facilities in which no confrontational speech occurred. This holds no merit.  Both the Supreme Court and our Court have explicitly rejected this argument.[49]  In *Hill*, the Supreme Court noted that "[t]he fact that the coverage of a statute is broader than the specific concern is of no constitutional significance.  What is important is that all persons entering or leaving health care facilities share the interests served by the statute," as we recognize they do here.[50]  As we have previously noted, "'[w]hen a buffer zone broadly applies to health care facilities' we may 'conclude the comprehensiveness of the statute is a virtue, not a vice, because it is evidence against there being a discriminatory governmental motive.'"[51]

Turco next contends that the Ordinance is overbroad because buffer zones have been demarcated at several other facilities under the Ordinance.  Courts, however, cannot strike down an ordinance "as overbroad unless the overbreadth is '*substantial* in relation to the [regulation's] plainly legitimate sweep.'"[52]  In *Bruni I*, we rejected the plaintiff's

---

[48] *Turco*, 935 F.3d at 172 (quoting *United States v. Stevens*, 559 U.S. 460, 130 (2010) (emphases omitted)).

[49] *Hill*, 530 U.S. at 730–32; *Bruni I*, 824 F.3d at 373; *Brown v. City of Pittsburgh*, 586 F.3d 263, 273 (3d Cir. 2009).

[50] *Hill*, 530 U.S. at 730–31.

[51] *Turco*, 935 F.3d at 171 (quoting *Hill*, 530 U.S. at 731).

[52] *McCauley v. Univ. of the Virgin Islands*, 618 F.3d 232, 241 (3d Cir. 2010) (quoting *Sypniewski v. Warren Hills Reg'l Bd. Of Educ.*, 307 F.3d 242, 259 (3d Cir. 2002) (emphasis added) (alterations in original)).

12

theory of overbreadth because, despite the ordinance's broad authorization, the city only demarcated two buffer zones, which were both outside facilities that provide abortions.[53] Turco argues that the Ordinance here applied far more broadly because the City marked out buffer zones at other clinics.[54] The record, however, points to the demarcation of buffer zones at six health care facilities at most, none of which are transitional facilities. The record contains no evidence that the City has "enforced" these buffer zones in any way outside of these other facilities.[55] Thus, we are not convinced that this case is materially distinct from *Bruni I* or that a "substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep."[56]

Accordingly, we conclude that the Ordinance is not overbroad.

## V.     Conclusion

For the above reasons, we will affirm the judgment of the District Court, dismissing the complaint.

---

[53] *Bruni I*, 824 F.3d at 374 (recognizing that the ordinance was "only enforced outside of health care facilities which provide abortions").
[54] Appellant Br. 50–51.
[55] *See Bruni I*, 824 F.3d at 374.
[56] *See Washington State Grange v. Washington Republican Party*, 552 U.S. 442, 449 n.6 (2008) (quoting *New York v. Ferber*, 458 U.S. 747, 769–771 (1982) (cleaned up)).